NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

STEPHANIE A. WHEELOCK,

              **Plaintiff,**

v.                               **Case No. 6:16-cv-860-ORL-37KRS**

COMMISSIONER OF SOCIAL
SECURITY,

              **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT JUDGE:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff, Stephanie A. Wheelock, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 8, 10, and the parties' Joint Memorandum,[1] Doc. No. 12.

### PROCEDURAL HISTORY.

In 2009, Wheelock filed applications for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.*, and under the Supplemental

---

[1] I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record.  Doc. No. 11.  Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order.  *Id.* at 4.

Security Income for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq*. She alleged that she became disabled on July 2, 2005.   R. 136, 138.

Her applications were denied originally, on reconsideration, by an Administrative Law Judge ("ALJ"), and by the Appeals Council.   Wheelock sought review of the Commissioner's final decision by this Court.   The Commissioner filed an agreed motion to reverse the decision and remand the case for further proceedings.   *Wheelock v. Comm'r of Soc. Sec.*, Case No. 6:11-cv-1862-Orl-28GJK, Doc. No. 20 (M.D. Fla. July 12, 2012).   The Court granted that motion and remanded the case on July 25, 2012.   R. 486-88.   Thereafter, the Appeals Council vacated the final decision and remanded the case to an ALJ for a new decision.   R. 492-94.

On remand, an ALJ held a hearing on September 2, 2015.   Wheelock (accompanied by an attorney) and a vocational expert ("VE") testified.   R. 437-63.   The ALJ sent medical interrogatories to John Kwock, M.D., a board certified orthopaedic surgeon, asking him to determine whether Wheelock's impairment met Listing 1.04.   R. 431, 940-43, 950.   Dr. Kwock responded to the interrogatories and provided a functional capacity assessment.   R. 945-53.   Upon the request of counsel for Wheelock for a hearing to cross-examine Dr. Kwock, the ALJ held a supplemental hearing on January 5, 2016.   R. 422-36.

After review of the record evidence, the ALJ issued a decision on March 2, 2016.   The ALJ found that Wheelock was insured under OASDI through September 30, 2008.   She had not engaged in substantial gainful activity since July 2, 2005, the alleged disability onset date.   R. 398. The ALJ concluded that Wheelock had degenerative disc disease; carpal tunnel syndrome; a history of endometriosis; and an anxiety-related disorder, which were severe impairments.   *Id.*   These

impairments, individually or in combination, did not meet or equal any impairments listed in the SSA regulation.   R. 399-400.

The ALJ found that Wheelock had the residual functional capacity ("RFC") to perform light work, except that she could not climb or crawl.   She could occasionally stoop, crouch, kneel and reach, and frequently handle and finger.   She would be limited to simple, routine tasks, without quotas or high-speed production.   R. 401.   In support of this finding, the ALJ gave significant weight to Dr. Kwock's opinions.   R. 407.   The ALJ gave no weight to the most of the opinions of James Shea, M.D., a treating physician.   R. 409-10.   The ALJ also found that Wheelock's statements about the limiting effects of her impairments were not entirely credible.   R. 406.

The ALJ determined that Wheelock could not return to her past relevant work as a preschool teacher.   R. 411.   After considering the testimony of the VE, the ALJ concluded that there were unskilled, light exertion jobs available in the national economy that Wheelock could perform.   R. 412.   Therefore, the ALJ found that Wheelock was not disabled.   R. 413.

Wheelock now seeks review of the final decision of the Commissioner by this Court.

## JURISDICTION AND STANDARD OF REVIEW.

Wheelock having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

3

NOT FOR PUBLICATION

## STATEMENT OF FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the parties' Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference.   Accordingly, I will limit my summary of the facts to those relevant to the issues raised in the Joint Memorandum to protect Wheelock's privacy to the extent possible.

Wheelock was born in 1968.   She graduated from high school and obtained additional training to be a preschool teacher.   R. 30, 441.   She previously worked as a preschool teacher.   R. 31.   She is left-handed.   R. 37.

At the original hearing in 2011, Wheelock testified that she could not work because of very bad carpal tunnel syndrome in her hands.   R. 33.   Back pain from degenerative disk disease made it difficult for her to sit and walk.   R. 34-35.   She took Lortab for pain.   R. 41.   She estimated that she could stand for about 30 minutes and sit for about 1 hour.   She could lift a gallon of milk.   R. 42.   She was able to put clothes in the washing machine and her husband helped her take the clothes out and fold them.   Her husband and her children did other inside and outside household chores.   R. 45.

At the hearing on remand in 2015, Wheelock testified that she experienced horrible backaches.   She could not bend to touch her toes.   R. 444.   She took Lortab for pain every 4 hours.   R. 447.   Her husband and children helped her with grocery shopping.   R. 445.   She tried to do household chores but she had to take breaks due to pain in her back and legs and swelling in her ankles.   R. 446.   She was able to drive, but she did not drive often.   R. 445.   She estimated that she could stand for 20 to 30 minutes and sit for 45 minutes.   R. 446-47.   It was difficult for her to lift a gallon of milk due to carpal tunnel syndrome in both wrists.   R. 449.

Medical records show that Dr. Shea, who is board certified in pain management and rehabilitation, initially examined Wheelock on October 23, 2007.   R. 820.   Wheelock complained of radiating low back pain with left leg and left foot numbness.   She rated the pain as 9 on a 10-point pain scale.   Prolonged standing, sitting, walking, bending and heavy lifting aggravated her pain.   Lortab was no longer relieving her pain, and a cortisone injection in her lower back provided little relief.   *Id.*   Upon examination, Dr. Shea found that Wheelock had limited range of motion in her lumbar spine.   R. 822.   A straight-leg raising test was positive for pain.   R. 821.   She had full muscle strength in her lower extremities except for 4/5 strength in the hamstrings.   Dr. Shea also observed decreased pin prick sensation at L3 on the right.   He prescribed Lortab, Robaxin and Zanaflex.   R. 822.

Charles E. Kollmer, M.D., an orthopedist, examined Wheelock on April 24, 2009 at the request of the State of Florida, Division of Vocational Rehabilitation.   R. 387, 389-91.   Upon examination, Dr. Kollmer observed a spasm in the neck with palpable tenderness and a positive Spurling's test, which is a medical maneuver to assess radicular pain.   Dr. Kollmer also identified tenderness in the levator scapular muscle with a positive Hoffmann's sign, a test for myelopathy. Wheelock also had positive Tinel's and Phalen's tests, which are signs of carpal tunnel syndrome. Finally, Dr. Kollmer observed paraspinal spasms and tenderness with a positive straight-leg raising test.   X-rays showed diseases in the lumbar and cervical areas of the spine.   Dr. Kollmer's impressions were cervical strain with degenerative disc disease and evidence of cervical spondylitic myelopathic pattern; lumbosacral strain with degenerative disc disease; and, bilateral carpal tunnel syndromes.   R. 390-91.   He opined that Wheelock should not lift or carry, could occasionally bend and stoop and must avoid overhead activity, ladders and repetitive activities.   R. 392.

5

NOT FOR PUBLICATION

An MRI of the lumbar spine taken on October 12, 2010 revealed posterior disc herniation at L4-L5 with bulge, and a subligamentous posterior disc herniation at L5-S1 with bulge and abutment of the left S1 nerve root, among other findings.   R. 828.

Dr. Shea continued to treat Wheelock for chronic neck and back pain in 2013.   On January 7, 2013, Dr. Shea noted marked tenderness and spasms in the lumbar spine and significantly restricted range of motion in the back. Wheelock reported that medication "helps to stop pain so [she] can do work." R. 849.   On February 22, 2013, Dr. Shea observed tenderness with pain in both feet and restricted range of motion in the back.   R. 845-46.   On March 15, 2013, Dr. Shea again observed moderate tenderness in the lumbar spine with restricted range of motion in the back. R. 843.   On April 5, 2013, Dr. Shea observed that Wheelock had limitation in range of the motion the back but no spasms were noted.   She also had pain and tenderness in her legs.   Dr. Shea changed Wheelock's pain medication from Lortab to Percocet.   R. 839-40.   On May 9, 2013, Dr. Shea again prescribed Lortab because Wheelock reported that Percocet upset her stomach.   R. 866-67.   On June 3, 2013, Dr. Shea again noted on examination that Wheelock had moderate tenderness in the lumbar spine with restricted range of motion in her back.   R. 864.   On July 1, 2013, Wheelock reported that pain medications decreased her pain, but she still had limitation in range of motion in her back.   R. 862.   On August 23, 2013, Dr. Shea noted limitation in range of motion in the back, and leg and foot pain.   R. 858-59.   On October 16, 2013, Dr. Shea added burning and radiating pain to Wheelock's elbows to her other symptoms.   R. 854-55.   He also noted that Wheelock had full muscle strength in her lower extremities.   She had limitation of motion in her back and radiating leg and foot pain.   R. 854-55.   On November 11, 2013, Dr. Shea continued to note limitation in range of motion in the back.   His assessments were cervicalgia, neck pain; lumbar

disc herniation at L4, L5 and S1; and lumbago, low back pain.   He prescribed Lortab and Zanaflex.   R. 852-53.   On December 6, 2013, Dr. Shea observed moderate tenderness with spasms in the lumbar spine and limitation on range of motion in the back.   He noted that Wheelock could perform activities of daily living without assistance but with increased pain.   R. 880-81.   On December 27, 2013, Dr. Shea observed moderate tenderness in the occipital nerves and marked tenderness in the trapezius muscle with mild to moderate tenderness in the lumbar spine.   R. 878.

Wheelock continued her treatment with Dr. Shea in 2014.   On January 24, 2014, Wheelock reported that cold weather increased her pain.   Dr. Shea prescribed Hydrocodone.   R. 876.   On March 19, 2014, Dr. Shea found that Wheelock had full muscle strength in her lower extremities. She had moderate tenderness with spasms in the lumbar spine and restricted range of motion in the back.   R. 869.   On May 5, 2014, Dr. Shea observed moderate to marked tenderness with spasms in the lumbar spine.   R. 890.   On June 27, 2014, Dr. Shea observed mild tenderness with spasms in the lumbar spine and restricted range of motion in the back.   R. 886.   On July 25, 2014, Dr. Shea added carpal tunnel syndrome ("CTS") in Wheelock's hands and lumbar radiculitis to his diagnoses.   He noted limited range of motion in the back.   He prescribed Norco.   R. 884-85.   On August 20, 2014, Dr. Shea noted moderate tenderness with spasms in the lumbar spine with limited range of motion in the back. Wheelock had full muscle strength in her lower extremities.   He added Neurontin to Wheelock's medications.   R. 883, 903.   On December 8, 2014, Dr. Shea noted that Wheelock had full muscle strength in her lower extremities with limitation in range of motion in her back and radiating leg and foot pain.   R. 895-96.

On January 13, 2015, Dr. Shea noted radiating right leg and foot pain. Wheelock had full muscle strength in her lower extremities.   R. 911-12.   On February 11, 2015, Dr. Shea noted

moderate tenderness with spasms in the lumbar spine with limited range of motion in the back and continuing arm and leg pain.   R. 909-10.   On March 9, 2015, Dr. Shea observed marked tenderness and spasms in the lumbar spine with more limited range of motion in the back as well as radiating leg pain.   R. 907-08.   On April 6, 2015, Dr. Shea observed that Wheelock had full muscle strength in her lower extremities with restricted range of motion in her back and radiating leg and arm pain.   R. 905.   On May 1, 2015, Dr. Shea observed moderate tenderness with spasms in the lumbar spine and restricted range of motion in the back.   He continued to note radiating leg and foot pain. Wheelock had full muscle strength in her lower extremities.   R. 915-16.   Later in May, Dr. Shea observed moderate to marked tenderness with spasms in the lumbar spine, restricted range of motion in the back and radiating leg and foot pain.   R. 917-18.   On June 25, 2015, he observed moderate to marked tenderness with spasms in the lumbar spine and restricted range of motion in the back.   Wheelock continued to have full muscle strength in her lower extremities.   R. 919-20.   On July 16, 2015, Dr. Shea observed moderate to marked tenderness in the lumbar spine with restricted range of motion in the back.   He continued to prescribe Norco for pain.   R. 922-23.

Dr. Shea completed a functional capacity assessment form on July 17, 2015.   In it, he opined that Wheelock could not lift from below waist level and could not lift above chest height. She would be limited to lifting 10 pounds to 10 times a day and otherwise she could occasionally lift up to 5 pounds.   She could walk for 15 minutes at a time up to 2 hours a day.   She could sit for 20 to 30 minutes at a time (decreasing times as the day progresses) for up to 2 hours a day.   She could occasionally balance but never stoop, crouch, kneel or crawl. Her ability to reach, handle, push and pull would be limited.   She also would be limited in the ability to work at heights, around

moving machinery, in temperature extremes and humidity, and around vibrations.   These limitations were due to due to L4-5 and L5-S1 disc herniation, limited range of motion in the lumbar spine and lumbar muscle spasms.   R. 925-27.

Thereafter, Dr. Shea's treatment notes continue to reflect limited range of motion in the back without tenderness or spasms.   R. 969-80.   Dr. Shea noted on September 23, 2015 that a recent MRI revealed L2-3, L3-4, L4-5, and L5-S1 disc herniations with mild central canal stenosis at L2-3.   R. 973.   As of November 13, 2015, Dr. Shea noted that Wheelock had full muscle strength in her lower extremities with restricted range of motion in her back.   R. 978.

During the hearing, the ALJ asked the VE to assume a hypothetical individual with the RFC stated in the ALJ's later decision.   R. 458.   The VE testified that this hypothetical person could perform the light, unskilled jobs of office helper, mail clerk, and router.   R. 459.   If the hypothetical person could not stoop (reach below the waist) and could sit for only 2 hours in a work day, the VE testified that the person could not perform the jobs he identified.   *Id.*

After the hearing, Dr. Kwock submitted responses to the ALJ's interrogatories after review of the evidence sent to him.   However, he did not review Dr. Shea's September 23, 2015 treatment note referring to the results of a recent MRI.   R. 430.[2]   Dr. Kwock opined that Wheelock would have minimal limitations in lifting and carrying.   R. 951.   In written remarks, Dr. Kwock indicated that the evidence did not show the existence of spinal cord involvement and that there were no useful physical examinations or radiological or neurophysiological testing that could be used for

---

[2] It is not clear from the record what evidence was provided to Dr. Kwock for review.   During the supplemental hearing in January 2016, the ALJ stated that Dr. Kwock was provided Wheelock's file the previous fall.   R. 425. Exhibit 33F in the record, containing Dr. Shea's records from April 2015 through December 2015 were not received by Wheelock's counsel at the administrative level until January 4, 2016.   R. 956.   It appears, therefore, that Dr. Kwock did not have a complete copy of the evidence in the administrative record at the time he rendered his opinions.

further evaluation.   R. 953.   In his functional capacity assessment, Dr. Kwock opined that Wheelock could frequently lift 11 to 20 pounds and occasionally lift 21 to 50 pounds. She could sit, stand or walk each for 4 hours at one time.   She could sit up to a total of 7 hours a day and stand or walk each up to 6 hours a day.   She could occasionally climb ladders or scaffolds and frequently engage in other postural activities.   R. 945-50.   During the supplemental hearing, Dr. Kwock testified that pain is subjective and that were was no way for him to objectively quantify Wheelock's pain.   R. 428-29.

## ANALYSIS.

In the Joint Memorandum, which I have reviewed, counsel for Wheelock asserts three assignments of error.   Counsel argues that the ALJ erred by giving no weight to the bulk of Dr. Shea's opinions.   He contends that the ALJ erred by failing to state the weight he gave to the opinions of Dr. Kollmer.   Finally, he argues that the ALJ's assessment of Wheelock's credibility was not based on proper consideration of all of the evidence based on the arguments he asserted regarding the ALJ's consideration of the opinions of Drs. Shea and Kollmer.   Counsel asks, based on the delay in resolving Wheelock's applications, that the Court reverse the final decision of the Commissioner and remand the case with a direction to the SSA to pay Wheelock benefits.   These are the only issues I will address.

### Opinions of Dr. Shea.

Dr. Shea treated Wheelock over a number of years.   His opinions are, therefore, entitled to significant weight unless the ALJ articulated good cause, supported by substantial evidence in the record, to give his opinions no weight.   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Additionally, Dr. Shea is board certified in pain management and rehabilitation.   Therefore, his

opinions in his area of expertise are entitled to more weight.   20 C.F.R. §§ 404.1527(c)(5),

416.927(c)(5).

The ALJ's primary basis for finding that Dr. Shea's functional capacity assessment was not

supported by the record focused on treatment notes from 2015 which showed that Wheelock had

full muscle strength in her lower extremities.   The ALJ wrote in sum as follows:

> Dr. Kwock reviewed those records and concluded that claimant could perform
> medium exertional work.   Dr. Kwock noted that the "only useful physical
> examination" of the claimant occurred in 2010, and did not find any clinical support
> for the existence of nerve root impingement." . . . Dr. Kwock's opinion and the
> claimant's conservative treatment support the conclusion that the claimant is not as
> limited as Dr. Shea concluded.

R. 410.

The ALJ's reasoning is not supported by substantial evidence in the record.   First, as

discussed above, the record does not support a finding that Dr. Kwock reviewed Dr. Shea's most

recent treatment notes and all of the diagnostic images and test results in the record.   Rather, the

ALJ stated on the record that Dr. Kwock had been furnished records in the fall of 2015, before Dr.

Shea's most recent treatment notes from April through December 2015 were added to the record.

Further evidence that Dr. Kwock did not have a complete copy of Dr. Shea's treatment notes is

supported by Dr. Kwock's statement that the only MRI was the one taken in 2010.   However, Dr.

Shea's September 2015 treatment note reflects that a more recent MRI had been taken which

showed deterioration in Wheelock's lumbar spine.   The 2010 MRI revealed posterior disc

herniation at L4-L5 without bulge, and a subligamentous posterior disc herniation at L5-S1 with

bulge and abutment of the left S1 nerve root.   In contrast, the 2015 MRI revealed L2-3, L3-4, L4-

5, and L5-S1 disc herniations with mild central canal stenosis at L2-3.

Substantial evidence also does not support the ALJ's conclusion that Wheelock received only conservative treatment of her back pain.  The record reflects that Dr. Shea consistently prescribed strong, narcotic medication, among other drugs, to treat Wheelock's back pain. Hydrocodone, Norco, Percocet and Lortab are all opioid based pain medications used to treat moderate to severe pain.  *See* Drugs.com, https://www.drugs.com/-- search by medication name (last visited June 27, 2017).   Use of strong pain medication is not consistent with the ALJ's finding that Dr. Shea's treatment of Wheelock was conservative, particularly when, as here, the record does not contain medical evidence that more aggressive treatment was medically appropriate to treat Wheelock's back pain.  *See Mackie v. Astrue*, No. 1:07-cv-98-MP-WCS, 2008 WL 719210, at *11 (N.D. Fla. March 11, 2008); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 n.2 (11th Cir. 2015)(citing with approval Report and Recommendation finding that treatment with a narcotic-like pain medication was not consistent with an ALJ's finding that a claimant received conservative treatment).

It also bears noting that while both Dr. Shea and Dr. Kwock are each board certified, Dr. Shea's certification is in pain management.   Dr. Kwock conceded that he evaluates pain based on objective evidence showing the source of pain.   R. 428-29.   In contrast, pain management specialists "use a broad-based approach to treat all pain disorders, ranging from pain as a symptom of a disease to pain as the primary disease."   Am. Bd. of Pain Medicine, *What is Pain Medicine?*, www.abpm.org/what (last visited June 27, 2017).   A pain management specialist's treatment of pain is consistent with the law in this circuit, which states that "[a] claimant's subjective testimony supported by evidence that satisfies the pain standard is itself sufficient to support a findings of disability."   *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).   In this case, there is objective

12

NOT FOR PUBLICATION

evidence of an underlying medical condition – herniated discs – that in Dr. Shea's opinion is of such a severity that it could reasonably be expected to give rise to Wheelock's reported pain. Because Dr. Shea's opinion about Wheelock's pain and the treatment of it is an opinion within his area of medical expertise, it is entitled to more weight than Dr. Kwock's opinion based solely on the limited records he reviewed.

For these reasons, I recommend that the Court find that the ALJ did not state good cause, supported by substantial evidence in the record, to give no weight to the opinion of Dr. Shea.

*Opinions of Dr. Kollmer.*

Counsel for Wheelock argues that the ALJ erred by failing to state the weight given to the opinions of Dr. Kollmer, an examining physician. Counsel for the Commissioner concedes that the ALJ did not state with weight given to these opinions but asserts that the error was harmless because the ALJ discussed those opinions and implicitly gave them no weight. Doc. No. 12, at 23.

In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011), the United States Court of Appeals for the Eleventh Circuit reiterated long-standing law in this circuit requiring an ALJ to "state with particularity the weight given to different medical opinions and the reasons therefor." When, however, an ALJ expressly considers the opinion of an examining physician and implicitly rejects that opinion, the error may be harmless. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160-61 (11th Cir. 2004).

In the decision, the ALJ discussed Dr. Kollmer's findings on examination and his opinions in detail. R. 403, 407. The ALJ found that Dr. Kollmer's findings were not consistent with Wheelock's allegations of disabling pain. The ALJ concluded, however, that Wheelock would

have some limitations in handling and fingering based, in part, on Dr. Kollmer's findings.   R. 408. This is sufficient to establish that the ALJ fully considered Dr. Kollmer's opinions.

However, substantial evidence does not support the ALJ's implicit rejection of most of Dr. Kollmer's opinions for many of the reasons discussed with respect to Dr. Shea's opinions.   The ALJ repeatedly relied on the opinions of Dr. Kwock to support the rejection of Dr. Kollmer's opinions.   R. 407.   But Dr. Kwock never explained why he rejected Dr. Kollmer's opinions, other than the conclusory written statement that "the RFCs included in the body of the exhibits are not substantiated by the presented evidence in my opinion."   R. 953.   Because Dr. Kollmer's functional capacity assessment supports, at least in part, Dr. Shea's opinions, I recommend that the Court find that the failure to state the weight given to Dr. Kollmer's opinions leaves the Court with an insufficient basis to determine if the ALJ's decision is supported by correct application of the law and by substantial evidence in the record.   *See Winschel*, 631 F.3d at 1179.

NOT FOR PUBLICATION

*Credibility.*

In the final assignment of error, counsel for Wheelock argues that the errors in the evaluation of the opinions of Drs. Shea and Kollmer undermine the ALJ's finding that Wheelock's reports of her functional limitations were not entirely credible.  Specifically, counsel asserts that Dr. Shea and Dr. Kollmer's findings, when properly weighed, support Wheelock's statements.   I recommend that the Court find that this assignment of error is also meritorious.

If an ALJ decides not to credit a claimant's testimony as to pain and other subjective symptoms, he must articulate explicit and adequate reasons for doing so.  *Foote*, 67 F.3d at 1561-62.   In this case, the ALJ did not clearly articulate the basis of the credibility finding, stating only that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."  R. 406.   "In the absence of a cogent discussion of the credibility determination, the statement is too general to permit meaningful judicial review."  *McKinney v. Astrue*, No. 8:08-cv-2318-T-TGW, 2010 WL 149826, at *3 (M.D. Fla. Jan. 15, 2010)(citing *Marbury v. Sullivan*, 957 F.2d 837, 840 n.2 (11th Cir. 1992); *Walker v. Bowen*, 826 F.2d 996, 1004 (11th Cir. 1987); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996)).

*Proceedings on Remand.*

Counsel for Wheelock asks that the case be remanded for an award of benefits due to the more than 3-year delay in completing the proceedings on remand after the Court's order of July 25, 2012, reversing the final decision of the Commissioner.  The Eleventh Circuit has cautioned against this approach.  *McDaniel v. Bowen*, 800 F.2d 1026, 1031-32 (11th Cir. 1986).  Moreover, this is not a case in which "the [Commissioner] has already considered the essential evidence and

it is clear that the cumulative effect of the evidence establishes disability without any doubt," *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993), because the Commissioner has not yet properly weighed the evidence and assessed Wheelock's credibility and she has not received a medical expert opinion based on all of the evidence in the record.

Alternatively, counsel for Wheelock asks that the Court limit the amount of time the Commissioner may take to resolve Wheelock's claims on remand.   In *Heckler v. Day*, 467 U.S. 104, 119 (1984), the United States Supreme Court overturned an injunction issued by a district court that required the Commissioner (then Secretary) of the Social Security Administration to complete administrative review of future claims within deadlines imposed by the Court. However, the Court stated in a footnote that its decision did not preclude federal courts from prescribing mandatory deadlines as a remedy in individual cases.   *Id.* at 119 n. 33.   Therefore, if the Court determines it appropriate to do so, it may require that proceedings on remand be completed within a specific period of time and/or that the Commissioner file periodic status reports stating the progress of the proceedings on remand.   *See, e.g., Bond v. Comm'r of Soc. Sec.*, No. 6:13-cv-175-Orl-36DAB, 2014 WL 12618197, at *3 (M.D. Fla. Jan. 27, 2014).

### RECOMMENDATION.

For the reasons stated above, it is **RESPECTFULLY RECOMMENDED** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 405(g) and the case be **REMANDED** to the Commissioner for further proceedings. It is further **RECOMMENDED**

16

that the Court direct the Clerk of Court to issue a judgment consistent with its order on this Report and Recommendation and, thereafter, to close the file.

<u>**Notice**</u>.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**Recommended** this 28th day of June 2017 in Orlando, Florida.

<i>Karla R. Spaulding</i>
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE